(No. 16027.—Judgment reversed.)

THE CITY OF CHICAGO, Appellee, *vs.* FRED A. KAUTZ, Appellant.

*Opinion filed June 17, 1924—Rehearing denied October 14, 1924.*

1. WEIGHTS AND MEASURES—*construction of section 7 of act of 1921, relating to weights and measures.* Under section 7 of the act of 1921, relating to weights and measures, the director of trade and commerce is given authority to test the instrumentalities of weighing and measuring, and if these instrumentalities are being used by a dealer selling from a wagon he may require the dealer to go to a convenient place for the purpose of making the proper tests, but the statute does not give authority to direct the re-weighing of a load of coal which has been weighed on an approved scale by a person authorized to do the weighing.

2. MUNICIPAL CORPORATIONS—*cities have general power to test scales and provide public scales and weighmasters.* Under the general power given to cities in paragraphs 54 and 56 of section 1 of article 5 of the Cities and Villages act, the city has authority to test private scales, to maintain public scales, and to appoint a public weighmaster to have charge of the scales and do the weighing.

3. SAME—*all regulatory police ordinances must be reasonable.* While a city has, under its general charter power to enact ordinances of a regulatory nature, authority to pass all necessary police ordinances to carry into effect these regulations, it cannot, under the guise of police regulations, arbitrarily interfere with the personal rights and liberties of citizens or impose unusual and unnecessary restrictions upon lawful occupations.

4. SAME—*when a regulatory ordinance is valid.* In order to hold valid an ordinance of a regulatory nature, enacted under general charter powers, the court must be able to hold that the ordinance tends in some degree toward the prevention of an offense or the preservation of public health, morals, safety or welfare.

5. SAME—*what Chicago ordinances regulating weighing of coal are reasonable.* Ordinances of the city of Chicago providing for the testing of all scales used for weighing coal and providing for the weighing of coal by licensed weighmasters, and requiring that the true weight be shown on a delivery slip, are reasonable regulations and a proper exercise of the police power.

6. SAME—*what provision of ordinance regulating weighing of coal is void.* A provision of an ordinance of the city of Chicago regulating the weighing of coal, authorizing the inspector or his deputies, without reasonable ground of suspecting a violation of law, to compel a driver, while *en route* to the place of delivery after his load has been properly weighed, to re-weigh the same on scales selected by the inspector, is void as an unreasonable interference with the orderly conduct of a lawful business.

APPEAL from the Municipal Court of Chicago; the Hon. PHILIP J. FINNEGAN, Judge, presiding.

DELBERT A. CLITHERO, and DWIGHT S. BOBB, (WALTER HOLSINGER, of counsel,) for appellant.

FRANCIS X. BUSCH, Corporation Counsel, and SAMUEL E. PINCUS, (ALBERT H. VEDER, FRANK J. CORR, ELIOT H. EVANS, JOSEPH B. FLEMING, LOUIS G. CALDWELL, and EHLERS ENGLISH, of counsel,) for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

The validity of a municipal ordinance being involved and the trial judge having certified that in his opinion the public interest so requires, this appeal is prosecuted directly to this court to review a judgment of the municipal court of Chicago finding appellant guilty of violation of the ordinance in question and assessing a fine of $50 against him.

Section 986 of the municipal code provides: "Any person, firm or corporation engaged in the business of selling

coal, charcoal or coke in the city, to be delivered in said city, shall provide the driver of the wagon or conveyance with a delivery ticket for each delivery of fuel contained on the wagon or conveyance, bearing the name of the person, firm or corporation selling such fuel, showing the gross weight, the tare and the net weight of the fuel, the name and kind of such fuel and the name and address of the purchaser of said fuel, or the person, firm or corporation to whom same is to be delivered, which said delivery ticket shall be delivered by the driver in charge of the wagon or conveyance to each customer, or his agent or representative, or to the person to whom delivery is to be made, at the time of the delivery of the fuel and before such fuel, or any part thereof, is removed from such wagon or conveyance. * * * Every such person, firm or corporation shall, on demand of the inspector of weights and measures of the city of Chicago, or any of his deputies, or the purchaser or intending purchaser, or his agent or representative, or the person to whom the delivery is to be made, produce and deliver said ticket to said officer or to his deputies, or to the purchaser or intending purchaser, or his agent or representative, or to the person to whom delivery is to be made, and whenever said officer or any of his deputies, or the purchaser or intending purchaser, or his agent or representative, or the person to whom delivery is to be made, shall demand that the said weight shown by said ticket be verified, it shall thereupon become the duty of the person, firm or corporation delivering such fuel to convey the same forthwith to some public scale selected by the inspector of weights and measures of the city of Chicago, or any of his deputies, or the purchaser or intending purchaser of the fuel being delivered, or his agent or representative, or the person to whom delivery is to be made, in the particular locality where the coal, charcoal or coke is to be delivered, or to any private scale in the particular locality where the owner thereof shall consent to such use, and permit the

weighing of the coal, charcoal or coke, together with conveyance and equipment, for the purpose of ascertaining the gross weight thereof, and shall, after the delivery of such fuel, return forthwith with the conveyance and equipment used in the delivery of such coal, charcoal or coke to the same scale and permit the weighing of said conveyance and equipment for the purpose of verifying the net weight of the coal, charcoal or coke as shown by the said ticket: *Provided, however,* that if such person, firm or corporation requests the privilege of re-weighing said coal, charcoal or coke, conveyance and equipment, on another and different scale from that selected by the inspector of weights and measures of the city of Chicago or any of his deputies, or the purchaser or intending purchaser, or his agent or representative, or the person to whom delivery is to be made, said inspector of weights and measures or his deputy, or the purchaser or intending purchaser, or his agent or representative, or the person to whom the delivery is to be made, shall consent to such weighing on some other scale in the particular locality."

The evidence shows that appellant is president of the Fred A. Kautz Coal Company; that the company delivered coal from its yards to its customers in Chicago by automobile trucks; that November 30, 1923, Paul Urban loaded 20,500 pounds of Pocahontas coal on a Pierce-Arrow truck and started to deliver the coal to a customer about nine miles from the company's yards; that two deputy inspectors of weights and measures followed the truck for about two miles; that there was nothing unusual or suspicious about the conduct of the driver of the truck or the condition of the load; that the inspectors stopped the truck and demanded that the driver take the load to the private scale of the Western Fuel Company so that the inspectors could weigh it; that the scale was located about a mile to one side of the point where the truck was stopped; that the inspectors permitted the truck to drive past other scales

while they were following it; that at the time the truck was stopped and the driver ordered to take it to the scale to be weighed the inspectors had no information that the delivery ticket did not show the proper weight nor had they any reason to suspect that the law was being violated; that the driver refused to take the load of coal to the scale of the Western Fuel Company and telephoned to appellant; that appellant and one of his salesmen came to the point where the truck had been stopped; that appellant refused to drive the truck out of its course to the scale designated and directed the driver to deliver the coal to the customer; that the value of the services of the truck and driver was $50 for a ten-hour day, and that it would have taken one and one-half hours' time to comply with the demand of the inspectors.

Appellant contends that the State has not delegated to the city of Chicago the power to pass the ordinance in question; that the ordinance is unconstitutional, in that it authorizes the inspectors to seize the employees and equipment of coal dealers without a warrant and without reason to suspect that an offense has been committed; and that the ordinance is vague and uncertain in its terms and unreasonable and burdensome in its provisions. Appellee meets these contentions with the claim that the act of 1921 in relation to weights and measures has expressly conferred upon cities the power to pass this ordinance; and furthermore, that it has the general power to regulate the inspection and weighing of commodities under items 54, 56 and 66 of section 1 of article 5 of the Cities and Villages act.

The purpose of the act in relation to weights and measures is to secure uniform and accurate standards and to protect the public from false weights and measurements by compelling the use of the approved standards. In order to carry out the purpose of the act it provides for inspection of the instrumentalities used in weighing and measuring commodities. By section 7 the officers whose duty it

is to enforce the act are given power "to inspect, test, try, and ascertain if they are correct all weights, measures, and weighing or measuring devices kept, offered, or exposed for sale, sold, or used or employed by any proprietor, agent, lessee, or employee in proving the size, quantity, extent, area, or measurement of quantities, things, produce, or articles for distribution or consumption purchased or offered or submitted by such person or persons for sale, hire, or award; and he shall have the power to and shall from time to time weigh or measure and inspect packages or amounts of commodities of whatsoever kind for the purpose of sale, offered or exposed for sale, or sold or in the process of delivery, in order to determine whether the same contain the amounts represented, and whether they are offered for sale or sold in a manner in accordance with law. He shall, at least once each year and as much oftener as he may deem necessary, see that all weights, measures, and weighing or measuring devices used are correct. He may, for the purpose above mentioned, and in the general performance of his official duties, enter and go into or upon, and without formal warrant, any stand, place, building or premises, or stop any vendor, peddler, junk dealer, coal wagon, ice wagon, delivery wagon, or any person whatsoever, and require him, if necessary, to proceed to some place which the director of trade and commerce may specify, for the purpose of making the proper tests." It is upon this section that appellee relies for its authority to require the dealer to comply with the demand of the inspector to re-weigh his load so that the weight shown by the delivery ticket may be verified. The section is poorly drafted and the intent of the legislature is awkwardly expressed, but when the whole act is read it is clear that no such authority is expressly given. Stripped of unnecessary verbiage, section 7 simply gives the inspector the authority to test the instrumentalities of weighing and measuring, and if these instrumentalities are being used by a dealer selling from a

wagon he may require the dealer to go to a convenient place for the purpose of making the proper tests. If the goods are being sold by the package, bottle, basket, spool or other measure designating a specific amount, and it is represented that such package, bottle, basket or spool contains a certain number of pounds, pints, pecks or yards, as the case may be, then the inspector is given authority to take one of said packages, bottles, baskets or spools and test the same to determine whether it contains the amount represented. At no place in the statute is the authority given to direct the re-weighing of a load of coal which has been weighed by a person authorized to do the weighing on an approved scale.

Under the general powers given to cities "to regulate the inspection, weighing and measuring of brick, lumber, firewood, coal, hay, and any article of merchandise," the city has the authority to test private scales, to maintain public scales, and to appoint a public weighmaster to have charge of the scales and to do the weighing. (*City of Chicago* v. *Wisconsin Lime and Cement Co.* 312 Ill. 520; McQuillin on Mun. Corp. sec. 970.) While a city has, under its general charter power to enact ordinances of a regulatory nature, authority to pass all necessary police ordinances to carry into effect these regulations, such regulatory ordinances must be reasonable and must not unnecessarily contravene the natural rights of individuals affected by them. Under the guise of police regulations the personal rights or liberties of citizens cannot be arbitrarily invaded. In order to hold valid an ordinance of a regulatory nature, enacted under general charter powers, the court must be able to see that the ordinance tends in some degree toward the prevention of an offense or the preservation of public health, morals, safety or welfare. (*Elie* v. *Adams Express Co.* 300 Ill. 340; *Town of Cortland* v. *Larson,* 273 id. 602; *People* v. *Weiner,* 271 id. 74.) If, under the guise of protecting the public interests, the ordinance arbitrarily interferes with private business and imposes unusual and un-

necessarily restrictive regulations upon lawful occupations it is void. *City of Chicago* v. *Hebard Express Co.* 301 Ill. 570; *McCray* v. *City of Chicago,* 292 id. 60; *Haskell* v. *Howard,* 269 id. 550; *Frost* v. *City of Chicago,* 178 id. 250; *Toledo, Wabash and Western Railway Co.* v. *City of Jacksonville,* 67 id. 37.

The ordinances of the city of Chicago provide for the testing of all scales used for weighing coal and provide for the weighing of the coal by licensed weighmasters and require that the true weights be shown upon a delivery slip. All of these regulations have been held to be reasonable and a proper exercise of the police power. Under these ordinances the only way for the coal dealer to cheat his customers is to steal coal from the wagon after it has been weighed. This he could not do unless he entered into a conspiracy with his drivers. The regulation in question is inquisitorial in its nature and is designed to secure evidence of crime. The likelihood of a dealer entering into a conspiracy with his drivers to steal his customers' coal is so remote that the regulation cannot be sustained on that ground, nor can it be sustained on the ground that it furnishes a means of testing the honesty of the public weighmasters. The regulation is entirely foreign to the subject of providing and maintaining accurate standards of weights and measures. It authorizes interference with the orderly conduct of a lawful business when there is no reasonable ground for suspecting that the law is being violated or the public welfare threatened. It is an abridgment of the privileges and immunities of the citizen without any legal justification, and it is therefore void.

The judgment of the municipal court is reversed.

*Judgment reversed.*