(No. 20089.—

THE FERGUSON COAL COMPANY, Appellant, *vs.* WILLIAM HALE THOMPSON, Mayor, *et al.* Appellees.

*Opinion filed February 18, 1931.*

PRITZKER & PRITZKER, (NICHOLAS J. PRITZKER, and REUBEN L. FREEMAN, of counsel,) for appellant.

SAMUEL A. ETTELSON, Corporation Counsel, (MARTIN H. FOSS, and SAMUEL L. GOLAN, of counsel,) for appellees.

Mr. COMMISSIONER PARTLOW reported this opinion:

Appellant, the Ferguson Coal Company, a corporation, filed its bill in the circuit court of Cook county against appellees, the city of Chicago, its mayor and commissioner of police, to enjoin them from arresting, causing to be arrested, threatening to arrest or issuing arrest slips to any person, firm or corporation driving a truck in excess of three tons' capacity and less than 30,000 pounds in weight upon Addison street, in said city, going to or from appellant's place of business; that appellees be decreed to remove signs reading, "Heavy traffic prohibited," at the intersections along Addison street; that they be enjoined from putting up other signs of a similar nature, and that ordinances prohibiting heavy traffic on certain streets be declared unconstitutional. Upon a hearing the bill was dismissed for want of equity, and an appeal has been prosecuted to this court.

The case was tried upon a stipulation and oral evidence. The stipulation shows that appellant is engaged in the coal business in Chicago. Its place of business is on the south side of Addison street, about 60 feet east of the intersection

of St. Louis avenue and about 340 feet west of Kimball avenue. It has no outlet from its premises for teams or trucks except a frontage of 132 feet on Addison street. The premises are improved with silos to hold coal, three switch-tracks from the Chicago and Northwestern railroad over which appellant receives its coal in car-load lots, an office, and other equipment necessary to the conduct of its business. It owns nine large motor trucks which are used to deliver coal to customers, which trucks weigh about 15,500 pounds each and have a capacity of 14,500 pounds. Occasionally it hires other trucks having equal capacity. Addison street is an east and west street extending from the lake west to the city limits. The north branch of the Chicago river crosses Addison street at California avenue, which is about three-quarters of a mile west of the premises of appellant. There is a bridge over the river at Addison street, There are no bridges across the river between Addison street and Belmont avenue on the south, a distance of about one-half mile. There are no bridges on the north between Addison street and Irving Park boulevard, a distance of about one-half mile. The river is also spanned by bridges at Montrose avenue, Lawrence avenue and at all other streets north of Lawrence avenue. Kedzie avenue is a north and south street three or four blocks east of the premises of appellant. It is a heavy traffic street and extends north from Addison street to the north limits of the city. Kimball avenue extends north and south from Addison street between Kedzie avenue and the premises of appellant. It is a heavy traffic street south of Addison street but traffic is limited north of Addison street. Kimball avenue has recently been widened and paved with asphalt north of Addison street. The first east and west street north of Addison street is Waveland avenue. There are east and west streets at block intervals north of Waveland avenue, all of which extend from Lake Michigan west to the city limits. Addison street has been by ordinance desig-

nated as a through street, and every vehicle traversing any street intersecting any through street is required to stop before entering upon said street. The north branch of the Chicago river extends from the 5100 block on North Kedzie avenue in a northwesterly direction past Crawford avenue, which is a north and south street. It is spanned by bridges at Kedzie avenue, Kimball avenue, Central Park avenue and Crawford avenue.

The evidence shows that on June 26, 1929, an ordinance was passed making it unlawful for any person, firm or corporation to permit any of its vehicles of more than three tons' capacity to enter upon, except at intersections, the following streets: North Francisco avenue from Addison street to Grace street, North Mozart street from Addison street to Irving Park boulevard, and Addison street from North Tripp avenue east to the river. The commissioner of public works was directed to place and maintain signs prohibiting heavy traffic on said streets. On September 11, 1929, a similar ordinance was passed prohibiting such traffic on Monticello avenue from Montrose avenue to Carmen avenue, North Central Park avenue from Addison street to Carmen avenue, and Kimball avenue north from Addison street to Devon avenue. Addison street was paved in 1915 with six inches of concrete and two inches of asphalt. Appellant bought the premises now occupied by it on Addison street in 1918. Most of appellant's customers live in the fortieth ward, which is north of Addison street, that street being the south boundary of the ward. Sixty per cent of the deliveries of coal are in large quantities. Appellant has a contract with the Municipal Sanitarium, which is located some distance almost directly north of appellant's place of business. This contract calls for the delivery of about 10,000 tons of coal per year. The most direct route from appellant's place of business to the sanitarium is east on Addison street to Kimball avenue and north on Kimball avenue almost directly to the sanitarium. There are other

streets which can be used from appellant's premises to the sanitarium but they are not as direct as Kimball avenue. The same thing is true of deliveries made to other customers of appellant. Seven of appellant's trucks have hard rubber tires but some of the new trucks recently purchased have pneumatic tires. The evidence on behalf of appellees shows that trucks are hard on pavements, and trucks of 15,500 pounds' weight, with a load of four to seven tons, would break down the pavement on Addison street.

After the evidence was heard it was further stipulated that the police have on several occasions issued arrest slips to drivers of trucks belonging to appellant when they were driving upon Addison street and Kimball avenue; but at no time did the police in any way interfere with ingress or egress of appellant's trucks to or from its place of business on Addison street, nor were any arrest slips issued to drivers of appellant's trucks upon Addison street when the trucks were entering Addison street for the purpose of entering or leaving appellant's place of business or driving on Addison street to the intersecting streets either east or west of appellant's place of business.

Appellant insists as ground for reversal that a municipal corporation possesses and can exercise only those powers which are granted in express words by the legislature, which are necessarily implied in or incident to the power granted, and such as are essential to the accomplishment of the declared object and purpose of the municipality; that any fair or reasonable doubt concerning the existence of a power must be resolved against the existence of the power; that ordinances must be constitutional, must be reasonable, must tend to promote the public health, safety, morals and welfare, and the means adapted to that end must be impartial in operation and not unduly oppressive; that the reasonableness of an ordinance is always to be determined in view of all the circumstances and conditions; that owners of property abutting upon a street have, as an incident to their

ownership, the right of public travel on the street and the right of ingress and egress to and from the street to their property in either direction; that an ordinance which totally destroys appellant's right of ingress and egress without substituted relief is oppressive, unreasonable and invalid; that the power to regulate the use of streets does not confer upon the city the power to prohibit their use; that an ordinance which in effect destroys the business of a party is void, and that an ordinance which submits the rights of individuals to the discretion of city officials is invalid. It is insisted that these ordinances do not comply with these requirements of law and for that reason they are void.

It must be conceded that most of the above contentions of appellant as to the law are correct. The question, however, is whether they are applicable to the law and facts presented in this case. By section 1 of article 5 of the City and Village act municipalities have been delegated the following express powers:

Seven.—"To lay out, establish, open, alter, widen, extend, grade, pave or otherwise improve streets, alleys, avenues, sidewalks, wharves, parks and public grounds, and vacate the same.

Nine.—"To regulate the use of the same.

Fifteen.—"To regulate and prevent the throwing or depositing of ashes, offal, dirt, garbage, or any offensive matter in, and to prevent injury to, any street, avenue, alley or public ground.

Twenty.—"To regulate traffic and sales upon the streets, sidewalks and public places.

Ninety-six.—"To direct, license and control all wagons and other vehicles conveying loads within the city, or any particular class of such wagons, and other vehicles, and prescribe the width and tire of the same, the license fee when collected to be kept as a separate fund and used only for paying the cost and expenses of street or alley improvement or repair."

Under the Motor Vehicle act the State resumed the exclusive power to regulate the speed of motor vehicles and prescribe what shall be the maximum gross weight permitted on the road surface, but it otherwise left the municipalities free to legislate upon the use of streets under the power already granted to them. Section 26 of the Motor Vehicle act provides as follows: "Provided, that nothing in this act contained shall be construed as affecting the power of municipal corporations to make and enforce ordinances, rules and regulations affecting motor trucks and motor-driven commercial vehicles used within their limits for public hire, or from making and enforcing reasonable traffic and other regulations except as to the rates of speed not inconsistent with the provisions hereof."

In *City of Chicago* v. *Foley,* 335 Ill. 584, the defendant was charged with operating a self-propelled, four-wheeled freight-carrying vehicle, the gross weight of the vehicle and load being in excess of the amount authorized by section 59 of an ordinance of the city of Chicago. The court directed a verdict for the defendant. Upon appeal to this court the judgment was reversed and the cause remanded. On page 587 this court said: "On May 16, 1927, when the ordinance in question was enacted, the city had the unquestioned power to pass an ordinance regulating the gross weight of any vehicle and the maximum load of any self-propelled vehicle permitted on the road surface of the city's streets. The validity of the ordinance when passed, and from that time until July 1, 1927, is not questioned. * * * The power of the city to regulate the use of the streets by the passage of the ordinance was not conferred upon it by section 3 of the law of 1925 or by section 3 of the law of 1927 but had existed long prior thereto. (Cities and Villages act, art. 5, sec. 1, clause 96; *City of Lincoln* v. *Gerard,* 329 Ill. 501; *Gartside* v. *City of East St. Louis,* 43 id. 47.) Sections 3 of these acts are not grants of power but each of them is a limitation or curtailment of a pre-existing

power." It was held that the trial court erred in holding the ordinance invalid and instructing the jury to find the issue in favor of the defendant. In 44 Corpus Juris, 1031, it is said: "A municipality, under its power to control and regulate the use of its streets, may limit the weight of vehicles or loads that may be transported over its streets. It may prohibit the operation of any vehicle which, with or without its load, because of the weight, destroys or permanently injures the street."

The ordinances in question do not violate the maximum weight limit. The city had power to determine what should be the maximum weight which it might by ordinance prescribe for vehicles and their loads. The city possessed express authority to pass the ordinances in question.

The determination as to whether or not an ordinance limiting loads is reasonable depends upon the requirements of the different localities, the age, construction and durability of street pavements and the need for traffic regulations and segregation. Where an ordinance is within the grant of power conferred upon municipalities the presumption is that it is reasonable. (*McCray* v. *City of Chicago, 292* Ill. 60.) In order to justify a court in interfering on the ground that an ordinance is unreasonable the proof must be clear and strong, and the action of the city council is final if there is room for reasonable difference of opinion upon the question. (*Dorwart* v. *City of Jacksonville, 333* Ill. 143.) A court will not hold an ordinance void and unreasonable if there is room for a fair difference of opinion upon the question, though the correctness of the legislative judgment may be doubtful and the court may regard the ordinance as not the best which might be adopted for the purpose. *Melton* v. *City of Paris, 333* Ill. 190.

Appellees' witnesses testified that the pavement on Addison street is not designed or capable of withstanding use by heavy traffic and that it is necessary to segregate heavy traffic in order to relieve conditions and facilitate traffic.

While appellant and the public in general are prohibited from using these streets for through hauls and they may suffer some inconvenience by not being permitted to take the most direct routes and suffer some increase in the cost of delivery by reason of traveling a few blocks out of the direct line to avoid restricted streets, these facts do not necessarily make the ordinances unreasonable or subject them to attack by appellant. The power of the legislature over public streets, so far as the public interest is concerned, is absolute and it may change their control at pleasure, giving jurisdiction over them to the city if it sees fit. (*McCormick* v. *South Park Comrs.* 150 Ill. 516.) So long as private rights are not invaded the legislative authority may vacate streets, may limit their use, and may permit their use for any purpose not incompatible with the object for which they were established. (*West Chicago Park Comrs.* v. *McMullen,* 134 Ill. 170; *Barrows* v. *City of Sycamore,* 150 id. 588; *Malleable Iron Co.* v. *Park Comrs.* 263 id. 446.) The ordinances, so far as the public is concerned, were clearly a valid exercise of the powers conferred upon the city. They were also valid as against appellant unless they deprived it of ingress and egress to and from its plant.

Appellant contends that the enforcement of the ordinances interferes with its right of access to its premises, and that this right is its private property which the municipality has no right to destroy without making compensation therefor. Owners of property bordering upon a street have, as an incident of their ownership, the right of access by way of the streets which cannot be taken away or materially impaired without compensation. (*City of Chicago* v. *Union Building Ass'n,* 102 Ill. 379; *Rigney* v. *City of Chicago,* 102 id. 64; *Shrader* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 242 id. 227.) The ordinances do not prohibit the use of the streets or deny abutting property owners access to their property. The ordinances simply restrict the weight of vehicles using the streets. They pro-

hibit the owner, together with the public in general, from hauling loads greater than three tons. They permit the use of the streets at intersections. A map of the territory covered by these ordinances has been filed in this case, and it is apparent that appellant can cross Addison street, under the express provisions of the ordinances, with its largest and heaviest trucks to St. Louis avenue and Bernard street, which are intersecting streets. It was stipulated that at no time did the police in any way interfere with the ingress or egress of appellant's trucks to its place of business on Addison street, nor were any arrest slips issued to drivers of appellant's trucks on Addison street when they were going to or from appellant's place of business to intersecting streets, either east or west. L. W. Ferguson, president of appellant, admitted that the nearest point of any alleged interference was two blocks from the entrance to his place of business. Only continuous and lengthwise heavy trucking on Addison street has been interfered with and appellant's right of access to its property has never been injuriously affected by the enforcement of the ordinances. Under no circumstances will a court of equity entertain a bill to enjoin the enforcement of an ordinance on the ground, alone, that it is void, but those seeking to restrain its enforcement must allege and prove facts showing that their interests are affected. They have no right to challenge provisions which do not affect them. *Moy* v. *City of Chicago,* 309 Ill. 242.

We find no reversible error, and the decree is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*