(Nos. 23224, 23225, 23226.—▮▮▮▮▮▮▮▮▮)
THE CITY OF CHICAGO, Appellee, *vs.* ISAAC WATERS, Appellant.—THE CITY OF CHICAGO, Appellee, *vs.* MARCUS HAUGE, Appellant.—THE CITY OF CHICAGO, Appellee, *vs.* FRANK GORMAN, Appellant.

*Opinion filed February 14, 1936—Rehearing denied April 24, 1936.*

Stone, C. J., and Shaw, J., dissenting.

Babcock, Gilruth, Beck & McConnell, (Thomas C. McConnell, C. Graydon Megan, and Owen Rall, of counsel,) for appellants.

Barnet Hodes, Corporation Counsel, (Martin H. Foss, and David Lefkovits, of counsel,) for appellee.

Mr. Justice Herrick delivered the opinion of the court:

In the municipal court of Chicago separate proceedings were instituted by the city of Chicago against Isaac Waters, Marcus Hauge and Frank Gorman for the violation of section 2947 of the revised code of Chicago of 1931. The cases were separately tried on the same day without a jury, each defendant was found guilty and judgment was entered against him. In each case the trial judge certified that the validity of a municipal ordinance was involved and in his opinion the public interest required a direct appeal to this

court. Each defendant perfected his appeal and the three cases were consolidated in this court for hearing.

Section 2947 of the ordinance in question provides, in substance, that every commodity sold in lot loads by weight delivered by truck within the city should be weighed by a city public weigh-master, and that his certificate of weight for each such lot should be delivered by the driver or person in charge of the truck or other vehicle to the purchaser or consignee of the load at the time of delivery and before any of the commodity is removed from the vehicle. Section 3623 provides that the public weigh-master's weight certificate shall state, *inter alia,* the commodity weighed, the date, the name and address of the purchaser or consignee, the conveyance in which the commodity is loaded, and the tare weight and the net weight of the commodity contained in such vehicle. The section proceeds: "In no case is any public weigh-master to state in his certificate the tare weight of any vehicle until after he shall have weighed the vehicle in such manner as to secure the weight as specified herein," etc.

In addition to the attack made on the ordinance the defendants contend that the coal severally trucked by them was appropriated to the contract of purchase in Morris, Illinois, and then and there became the property of the buyer; that the ordinance has no application to the deliveries made by the defendants because the sale was made and completed without the corporate limits of the city of Chicago.

We will first take up the issue as to whether the sale was made and completed in Morris or Chicago. The evidence common to the three cases is that the appellants delivered coal in truck-load lots to purchasers living in Chicago, none of which coal was weighed by a city of Chicago public weigh-master and no public weigh-master's certificate had been issued, as required by the provisions of the ordinance in question. The defendants are severally non-resi-

dents of Chicago, Hauge and Waters living at Morris and Gorman at Blue Island. Each owns his own truck. The coal delivered was secured by each defendant from a coal company at Morris. The company has an independent coal dealer or broker residing in Chicago who sells the coal of the coal company. The company takes orders at times direct from the customer, but there is no evidence in any of the cases to show that situation applies to any sale here. The usual custom of the business is that a statement of the account is rendered by the coal company and delivered to the truck-driver. No separate charge is entered thereon for the trucking service. The driver collects for the coal, deducts his charges for trucking, and either pays the remainder to the broker in Chicago or the coal company at Morris, whichever is the more convenient for the driver. If payment is made to the coal company, it in turn pays the Chicago broker for his services. The coal is sold delivered in the purchaser's bin by the company. The truck driver receives his orders to load his truck and where to make delivery from the coal company. None of the defendants ever had any transaction with the customer to whom delivery was made, was not employed by the customer to haul the coal, the customer gave no directions for the delivery of the coal and had no control over the vehicle in which the coal was transported. The details of the method of transportation and delivery were arranged by the coal company. The load trucked by Hauge was for three different customers. He received the statement of the account from the Chicago broker, with the names of the customers and the quantity of coal to be delivered to each one. The defendant Waters received a statement from the coal company for the load of coal delivered by him. The statement showed a flat price of $18, plus tax, for three tons, and showed the coal was purchased from a coal company which operated a mine at Morris. Gorman received his orders to deliver the coal from the mining com-

pany at Morris. He did not testify. The statement for the coal delivered by him was offered in evidence and showed that the customer paid a flat price of $11.50, plus tax, for three tons of coal.

It is the law that sales of personal property are regarded as made at the place where the vendor shows his assent to the sale by delivering the property sold to the vendee's carrier, in the absence of any agreement or any special circumstances showing a contrary situation. (Ill. State Bar Stat. 1935, chap. 121a, sec. 46, par. 49; *City of Chicago* v. *DiSalvo,* 302 Ill. 85; *People* v. *Hill Top Mining Co.* 300 id. 564.) The evidence here clearly shows that the carrier was neither selected nor designated by the purchaser, and that the purchaser, so far as he knew, was not paying any separate charge for the carriage of· the coal. The price to him was net, delivered to him by the seller. The defendants were clearly the agents of the coal company, and each sale was made within the city limits of Chicago.

There remains for decision the question of the validity of the ordinance. The defendants contend that the effect of the above two sections of the ordinance is to require that coal brought into the city of Chicago by truck direct from the mine to the consumer in Chicago, although weighed at the mine on State-tested scales, be unloaded within the city limits of Chicago, so that the truck can there first be weighed empty by a public weigh-master and then re-loaded in order that both truck and coal can be re-weighed by the same public weigh-master for the purpose of making the certificate described in section 3623 and required by section 2947, for the violation of which latter section the judgments rested. It is here urged that by reason of these requirements, as applied to the defendants, the ordinance is unreasonable, deprives the defendants of the equal protection of the law and deprives them of liberty and due process of law, in violation of section 1 of the fourteenth amend-

ment to the Federal constitution and of section 2 of article 2 of the Illinois constitution.

This issue is one of first impression in this court, and we are not referred by either side to any decision where the precise question presented has been decided. The problem must therefore be resolved by the application of sound, fundamental legal principles. It is immaterial to the issues here that the coal in question was weighed outside of the city of Chicago on State-tested scales. The Weights and Measures act does not repeal, supersede or to any extent modify the right of a municipality to adopt an ordinance regulating the method of ascertaining the correctness of weights and measures. The power of the city to adopt the particular ordinance before us, together with its reasonableness, and that it was not subject to attack as making a classification obnoxious to the constitutional provision, was definitely decided in *City of Chicago* v. *Wisconsin Lime and Cement Co.* 312 Ill. 520. The attack here made on the validity and constitutionality of the ordinance is not the same, however, as was decided in that case.

The defendants, among other cases, rely on *City of Chicago* v. *Kautz,* 313 Ill. 196, as supporting their side of the issue as to the unreasonableness of the ordinance. In that case the provision of the ordinance authorizing a city inspector or his deputies, without reasonable grounds for suspecting a violation of the ordinance, to compel a vehicle-driver enroute to the place of delivery after his load had been weighed in conformity with the provisions of the ordinance, to re-weigh the load on scales selected by the inspector or his deputies, was held void as unreasonable. That provision did not affect the remainder of the ordinance. The case presented here does not grow out of an attempt to have any of the defendants here re-weigh his coal after having it once weighed over a Chicago public weigh-master's scales. The case is not authority, either helpful or persuasive, of the correctness of the defendants' contention.

In the determination of whether the ordinance is unreasonable and contrary to the grain of the constitutional provisions *supra* we must not be unmindful of those legal rules which have survived the test of many years for the determination of the reasonableness and constitutionality of statutes and ordinances. Where the ordinance is within the grant of power conferred by the legislature the presumption is in favor of the validity of the ordinance, and the burden is always on the party attacking its legality to show such invalidity, (*Ferguson Coal Co.* v. *Thompson*, 343 Ill. 20; *City of Chicago* v. *Mayer*, 290 id. 142; *City of Chicago* v. *Washingtonian Home*, 289 id. 206; *City of Chicago* v. *Shaw Livery Co.* 258 id. 409;) and the courts are without power to inquire into the wisdom of an ordinance or the motives that prompted its enactment, with the possible exception that municipal ordinances may be impeached for fraud by persons injuriously affected thereby. (*People* v. *Grand Trunk Western Railway Co.* 232 Ill. 292.) Ordinances which regulate the methods of weighing coal and other bulky articles sold and delivered within the boundaries of the municipality are strictly within the police power. *City of Chicago* v. *Wisconsin Lime and Cement Co. supra; O'Maley* v. *Borough of Freeport,* 96 Pa. St. 24, 30; McQuillin on Mun. Ordinances, sec. 485.

The opportunity to defraud the consumer in the sale of coal in load lots is great and the consumer has no adequate way to protect himself against being cheated. The delivery of true weights of coal to the consumer is a matter clearly related to the public welfare and the city has the right to adopt reasonable ordinances therefor. (*City of Chicago* v. *Wisconsin Lime and Cement Co. supra.*) The court will take judicial notice of the fact that Morris is about sixty-two miles south and west of Chicago and that facilities are available for the transportation of coal by rail direct from Morris to Chicago. It is a matter of common knowledge that enormous quantities of coal are

moved by both rail and water to Chicago and there held in coal yards, bins or structures for the storage of coal until moved therefrom to the purchaser, and occasionally coal may be hauled from the car or vessel in vehicles direct to the consumer. As to coal thus transported and sold, an ordinary and natural way to regulate the weighing of the load would be to weigh the vehicle empty and then weigh the same vehicle after it is loaded for delivery to the vendee. The circumstance that has brought about the controversy here is, after all, one of transportation.

The defendants, who severally reside outside the city of Chicago, are hauling for a coal dealer whose source of supply is at Morris, Illinois, and who is selling, either through itself or broker in Chicago, direct to citizens who reside in the city of Chicago. It is more convenient, and doubtless less expensive, for the particular dealer to weigh his truck, both empty and loaded, on the public weighmaster's scale at Morris. This, however, is not a compliance with the ordinance. The defendants claim it is unreasonable to require them to unload their trucks after entering Chicago, weigh the truck empty and then re-load and make delivery, and that the coal is always damaged and there is always a loss of coal occasioned by the unloading and re-loading. There may be a loss. Such loss sustained by unloading and re-loading, however, is common to those dealers who maintain coal yards and bins in the city of Chicago for the sale of coal and who comply with the ordinance. The object of the ordinance was not to benefit persons engaged in the coal business, or to give one competing dealer an advantage over another, or to enable some to comply with the ordinance readily and without inconvenience while others could not, but its purpose was to endeavor to give to the buyer of the coal, as nearly as practicable, honest weight. The defendants, non-residents of the city of Chicago, are asking for a practice of weighing, as applied to the business done by them in the city, which under

the ordinance here would not apply to those truckers living in the city and delivering coal from the local yards or local dealers in the city to the consumer. To recognize the demand of the defendants would be to discriminate between the local truckmen and dealers in Chicago in favor of non-residents.

In *State* v. *Nelson*, 68 N. W. (Minn.) 1066, 34 L. R. A. 318, the Supreme Court upheld the validity of an ordinance of the city of Minneapolis which provided, in substance, that any person desiring to sell milk in the city be required to apply for a license, and before the license be issued the dairy herds of the applicant should be examined as to healthfulness, etc., and any tubercular cows eliminated. The ordinance was objected to as being extra-territorial. The ordinance was sustained upon the principle that the offense, under the ordinance, was the sale of milk without a license within the corporate limits of the city, and if the owner of the dairy did not wish to have his dairy subjected to the regulation he need not sell his milk in the city. In *In re Vandine*, 6 Pick. (Mass.) 187, 17 Am. Dec. 351, an ordinance was declared valid which required garbage collectors operating in the city of Boston to be licensed, regardless of whether the licensee was a resident or non-resident of Boston. And so it was held in the case of *City of Petersburg* v. *Cocke*, 36 L. R. A. (Va.) 432, that a license tax imposed on the right to practice law in a city is properly collectible from an attorney who practices law therein although he is not a resident of the city.

This court sustained an ordinance requiring persons transporting coal in vehicles from places within to places outside the city to obtain a license before such movement could be made. (*Gartside* v. *City of East St. Louis*, 43 Ill. 47.) While the transportation feature there is the converse of that here, the loads originating without the city and moving into the city, the principle to be deduced is the same. If the city may lawfully license a business it may impose

reasonable regulations upon such business. The power to regulate carries with it the power to license, but in the absence of express statutory provision there can be no power to license without the power to regulate.

The ruling to be deduced from the authorities is, that where a city has enacted an ordinance within its charter or granted powers regulating a business, the non-residents who desire to follow such business within such municipality must conform to the requirements of the ordinance. If the defendant non-residents desire to compete in the trucking business in the Chicago market they must submit to the requirements of the ordinance regulating the business. The facts, if there be such, that it may be necessary to establish coal yards in Chicago, ship by rail in car-load lots, unload from the car and deliver to the purchaser, or submit to an unloading and re-weighing of the coal in the event that coal moves into Chicago by trucks, are incidental problems, to be solved by the coal company in the event it desires to sell in the Chicago market. There is no discrimination made by the ordinance against the defendants. They have merely elected to do their business in a manner more convenient to them and different from the method prescribed by the ordinance. Instead of conforming to the ordinance they are asking that they be excepted from its terms.

The ordinance is not unreasonable and is not susceptible to the charges lodged against it of being a violation of the provisions named of the State and Federal constitutions.

The several judgments of the municipal court of Chicago are affirmed.

*Judgments affirmed.*

SHAW, J., and STONE, C. J., dissenting:

In our opinion the ordinance set forth in the foregoing opinion is unreasonable and should be held void. It shows on its face that it is cleverly designed for the purpose of conferring a monopoly in the coal business upon dealers residing within the city of Chicago, to the exclusion of

other citizens residing outside of that city who have an entirely lawful right to sell to persons who live within the corporate limits. This is apparent from the requirement that the empty wagon or truck must be weighed before the load is delivered to the purchaser. We cannot perceive any reason why the purchaser could not as well be protected by weighing the empty wagon or truck after delivery. This would permit hauling the load across public scales to obtain the gross weight, the unloading of the commodity, followed by weighing the empty wagon or truck to obtain the tare weight, and the subtraction of the tare from the gross to obtain the net. This procedure would give an accurate net weight, which is the only point as to which the public may require protection, and if that is the true purpose of the ordinance, which it obviously is not, it would serve all legitimate purposes. Under such an ordinance, producers of coal or other commodities who live outside of Chicago could deliver their produce within that city and the residents of that city could have the benefit of whatever savings might be involved. It is clearly unreasonable to require that a load of coal coming into Chicago be unloaded, the truck weighed, then the coal re-loaded and weighed again. This extra and useless handling charge can inure only to the benefit of local dealers and it can only result in penalizing the consumer and the outside producer.

The holding in this case is in our opinion contrary to what we said in *City of Chicago* v. *Kautz,* 313 Ill. 196: "If, under the guise of protecting the public interests, the ordinance· arbitrarily interferes with private business and imposes unusual and unnecessarily restrictive regulations upon lawful occupations it is void.—*City of Chicago* v. *Hebard Express Co.* 301 Ill. 570; *McCray* v. *City of Chicago,* 292 id. 60; *Haskell* v. *Howard,* 269 id. 550; *Frost* v. *City of Chicago,* 178 id. 250; *Toledo, Wabash and Western Railway Co.* v. *City of Jacksonville,* 67 id. 37." In the same case we pointed out that in order to come within

the police power an ordinance of a regulatory nature must be of such a character as to tend in some degree toward the prevention of an offense or the preservation of public health, morals, safety or welfare.

The argument that the case of *Wisconsin Lime and Cement Co.* v. *City of Chicago,* 312 Ill. 520, is controlling here, is not impressive. This ordinance was there held to be reasonable as applied to coal dealers operating within the city of Chicago, on the ground that it was "liberal in permitting the dealers themselves to be appointed deputies for their own convenience." Here the record shows that the complaining mining companies cannot obtain weighmasters' certificates, thus effectually shutting out of the markets of the city of Chicago a commodity that the people have a right to buy. To put the unreasonable and unnecessary burden of unloading, weighing the truck and reloading the coal, upon those who would offer coal to residents of the city of Chicago, from the outside of that city, is not in the interest of the public welfare and is not necessary to secure honest weights.

It is quite as much in the interest of the public welfare that the people of the city of Chicago be afforded access to cheap markets for the necessities of life as it is that weights be watched. To so restrict access to such market by putting such unnecessary expense on the purchaser is clearly unreasonable.

It is likewise an unjust discrimination against large communities that happen to be so situated as to enable them to take coal from the ground cheaply and thus give a livelihood to thousands working in that business.

It is well known that there are many sources of cheap coal within trucking distance of Chicago, and that by loading directly onto a truck at the mine and unloading directly into the consumer's bin, many handling charges are avoided. While such competition is clearly disadvantageous to Chicago coal dealers, it is certainly advantageous

to the mine owners and those citizens of Chicago who wish to purchase this kind of coal. No one can doubt the legal right of these mine owners and consumers to deal directly with each other if they choose so to do, and, in our opinion, an ordinance which throws an artificial and unreasonable barrier across the path of this commerce, without any corresponding benefit to the health, morals, safety or welfare of the people, is void.