RICHARD I. STEARNS, Trustee, *et al.* Appellants, *vs.* THE CITY OF CHICAGO *et al.* Appellees.

*Opinion filed October 22, 1937—Rehearing denied Feb. 17, 1938.*

DANIEL A. COVELLI, (HARRY A. GOLDSMITH, of counsel,) for appellants.

BARNET HODES, Corporation Counsel, (MARTIN H. FOSS, and ALPHONSE CERZA, of counsel,) for appellees.

Mr. JUSTICE SHAW delivered the opinion of the court:

The several appellants, who were plaintiffs in the superior court of Cook county, are each engaged in the open-air garage business, operating so called "parking lots," and in that business are subject to the regulations of certain ordinances in the city of Chicago, and to the payment of certain license fees enacted thereby. The chancellor in the court below denied their prayer for relief by way of injunction against the enforcement of these ordinances, as

amended, and allowed an appeal directly to this court, certifying that the validity of a municipal ordinance is involved in this litigation, and that the public interest requires the appeal to come directly to this court.

The ordinance complained of divides garages into two classes. Class 1 includes all public garages carried on within an enclosed building, and in this class an annual license fee is fixed at $25 where the capacity of the building does not exceed twenty-five automobiles, and at one dollar per year for each car-capacity in excess of twenty-five. Class 2 includes all garages not enclosed within a building having four walls and a roof extending from wall to wall and covering the entire space enclosed by such walls. On this class an annual license fee of one hundred dollars is imposed, where the capacity of the premises does not exceed twenty-five automobiles, and an additional four dollars per year for each car-capacity in excess of twenty-five. Prior to the amendment of the ordinance in 1936, the license fee was the same for both classes of garages, and it is this three hundred per cent increase in license fees for open-air garages that constitutes the principal ground of complaint. The ordinance defines the word, "public garage," to mean any building, structure, premises, enclosure or other place (except a public thoroughfare) within the city where two or more automobiles, auto cars or any similar self-propelled vehicles are stored or parked in a condition ready for use. The ordinance contains numerous regulatory provisions which are not here in question.

The facts in the case appear from admissions in the pleadings, from a stipulation of the parties and from the oral testimony of several witnesses. These witnesses were police officer Teeling, in charge of the stolen-automobile section of the police department of Chicago, and commanding officer of that section; George E. Graves, division fire marshal in charge of the bureau of fire prevention for the city of Chicago; David Flynn, chief of the traffic bureau

of the Chicago police department, and Henry Wilson, assistant superintendent of the license department of the city of Chicago. For the plaintiffs the only oral testimony was that of Glenn M. Barnard, a garage manager who managed both an open-air and an enclosed garage in the loop district of Chicago. From the sources indicated, certain facts may be found which we will summarize rather than state the details of the pleadings, stipulation and testimony.

The open-air garages appear to have a much larger turnover than the enclosed garages, parking being for a few hours for each car and for an indefinite period as to each owner, as against the more customary rental of individual stalls by regular patrons in the enclosed type of garage. Because of their ready accessability and a custom of leaving keys in the cars, these open-air garages offer much greater opportunities for the theft of automobiles than do the enclosed ones, and the records indicate a much higher theft rate from the parking lot than from the enclosed garages, thus requiring more police surveillance. It is also apparent that there is a tendency on the part of the owners and operators of the parking lots to protrude their cars over the line onto sidewalks and frequently park the cars in the streets or entirely on the sidewalks during crowded periods; also a tendency toward congestion in the streets adjacent to the parking lots while getting the cars in and out. All of this imposes heavier burdens on the police department in connection with the class 2 garages than with those in class 1. There is further evidence to show that fire hazards are greater in the open-air than in the enclosed type of garage, it being testified that in the enclosed type of garage special drainage is required whereby grease and oils are separated from other sewage and collected in traps, so as not to escape beyond the buildings, and also that by sprinkler systems and by reason of the walled enclosures, a fire in an enclosed garage could be readily and easily handled by the fire department. On the other hand, there

was evidence, as to the open-air garages, tending to prove that a fire among automobiles in such a place would be difficult to control and dangerous to adjacent property; that such a fire could not be prevented nor controlled by any sprinkler system and, furthermore, that seepage of oil and gasoline from an open-air garage through the earth might, and in some cases did, travel great distances through the earth, later to accumulate in basements and elsewhere. Many other facts and much other testimony might be stated but enough has been given to indicate the basis for our opinion.

Appellants' brief and argument is divided into eight sections for each of which many authorities are cited. But little fault can be found with the general propositions stated by them and we will only pass upon those which are necessarily pertinent to this case, and then only for the purpose of determining their applicability. The appellants say that the public garage business is a lawful one and is necessary for relieving congestion and traffic; that ordinances imposing license fees are generally to be construed liberally in favor of the citizens; that due process of law prohibits partial laws affecting only the rights of classes of individuals; that both State and Federal constitutions require all citizens be assured equal protection of the laws; that ordinances which unjustly discriminate between persons coming within the same class are void; that an ordinance which is unreasonable, unjust and oppressive is invalid; that license ordinances passed solely for the purpose of raising revenue are void and that the enforcement of a void city ordinance may be enjoined in equity. Of these propositions neither the first, third, fourth nor eighth require any consideration. As to the second contention—*i. e.,* that ordinances imposing license fees are to be construed liberally in favor of the citizen, appellants rely upon *Lowenthal v. City of Chicago,* 313 Ill. 190, and *Crerar Clinch Coal Co.* v. *City of Chicago,* 341 id. 471. In the *Lowenthal case*

it was held that the legislature had not conferred upon the city the right to regulate or license drug stores. The *Crerar Clinch case* held that the authority given by the legislature to the city to license garages applied to the public garage business and did not authorize an ordinance requiring a license for the operation of a private garage. Neither of those cases are in point, as in them an effort was being made by construction to extend the meaning of words used by the legislature. Section 82 (par. 65) of article 5 of the Cities and Villages act especially authorizes cities and villages to regulate the garage business, and under such circumstances there is no question of construction involved. The rule in this case is as we stated in *City of Chicago* v. *Waters,* 363 Ill. 125: "Where the ordinance is within the grant of power conferred by the legislature, the presumption is in favor of the validity of the ordinance, and the burden is always on the party attacking its legality to show such invalidity, [citing cases] and the courts are without power to inquire into the wisdom of an ordinance or the motives that prompted its enactment, with the possible exception that municipal ordinances may be impeached for fraud by persons injuriously affected thereby."

Essentially the appellants' case narrows itself to a consideration of the single question of whether or not there is a sufficient difference between the garage business conducted within walls and under a roof, on the one hand, and in the open-air on the other, to justify the separation into classes. They argue with much force and logic that the two businesses are identical, but their argument as to the different types of place of doing business would apply more to the wisdom and judgment of the ordinance than to its validity. Thus, they say that it is obviously easier to inspect an open-air lot than an enclosed building, to which the fire inspection department replies that once an enclosed building is inspected and its facilities learned, it requires but little attention thereafter, while an open-air lot requires

constant inspection and supervision. They say that the chances of theft from enclosed garages are as great as those from open-air lots, to which the police department replies that the patrons of enclosed garages are generally known to the owner and rent regular space, whereas in the open-air lots the cars are readily accessible and this requires a constant lookout to be kept for automobile thieves and, furthermore, that the encroachment upon sidewalks by the proprietors of open-air lots requires constant police intervention. Several other arguments *pro* and *con* are introduced, but they are not for our consisderation, other than the rule announced in *City of Chicago* v. *Waters, supra.* They should be addressed to the city council. It is neither alleged nor proved that the ordinance in question is confiscatory nor so extremely arbitrary and unreasonable as to amount to a deprivation of property without just compensation.

Laws will not be regarded as special or class legislation merely because they affect one class and not another, provided they affect all members of the same class alike. (*People* v. *Sisk,* 297 Ill. 314, and *People* v. *Callicott,* 322 id. 390.) A classification will be sustained if it is reasonably adapted to secure the purpose for which it is intended and not purely arbitrary, and such a classification will not be disturbed by the courts, unless it can be clearly seen there is no fair reason for the distinctions made. This record discloses ample reason for the classification adopted and we will not interfere with the judgment of the city council.

Appellants' contention that license ordinances passed solely for the purpose of raising revenue are void needs no consideration, as the ordinance before us is not passed solely for revenue but contains many regulatory, prohibitive and penal provisions.

We find no error in the record and the decree of the superior court of Cook county will be affirmed.

*Decree affirmed.*